RAND & CARSON v. WILEY ET AL.

1. **Contract:** INCORPORATION OF OTHER CONTRACT: CONSTRUCTION: ACTION ON: RECOVERY ON PLEADINGS AND ADMISSIONS. Plaintiffs sued defendants on a contract in which the latter bound themselves to assign and transfer to plaintiffs all their right, title and claim in and to certain unpaid stock subscriptions vested in them under and by virtue of a contract with a third party, which last named contract was made a part of the one sued on. But the last contract is found to vest in the defendants no interest in any stock subscriptions. But since the petition charged upon the defendants liability to transfer the subscriptions, and the averment was not denied, and it appears that defendants admitted their liability by making a tender of the subscriptions which they admitted were covered by the contract, and the whole case was tried upon the theory that defendants were bound by the contract to transfer the subscriptions, *held* that plaintiffs were entitled to recover on the evident understanding and agreement between the parties as to what the contract meant, rather than upon the language of the contract itself.

2. **Costs:** DIVISION OF: WHEN NOT MADE. A defendant against whom judgment is recovered cannot demand that a part of the costs be taxed to plaintiff, on the ground that plaintiff has failed to recover the amount claimed by him, unless there was a tender made and pleaded, or an offer made under the statute to permit judgment to be entered for a larger sum than the judgment finally recovered.

*Appeal from Wapello Circuit Court.*

FRIDAY, OCTOBER 29.

ACTION IN CHANCERY. The cause was sent to a referee, and, upon his report, a decree was had for plaintiffs. Defendants appeal.

*McNett & Tisdale,* for appellants.

*Chambers & McElroy* and *H. B. Hendershott,* for appellees.

BECK, J.—I. The plaintiffs allege in their petition that they recovered a judgment against the Ottumwa Water-

1. CONTRACT: incorporation of other contract: construction: action on: recovery on pleadings and admissions. power Company, which became a lien upon the property and franchises; that defendant S. L. Wiley & Co. had purchased the property of the company at a sheriff's sale, upon a judgment for mechanics' liens in their favor, and held a certificate under which they would be entitled to a deed upon the expiration of the time for redemption; that it was the purpose of defendants to acquire the ownership of the company's property in order to use it in supplying the city of Ottumwa with water, and that, to enable them to carry out their plans, they proposed to acquire all liens upon the property, and to this end made contracts with one Langford and plaintiffs. The action was brought at law, upon the contract with plaintiffs. Langford was made a party after the suit was commenced, and it was transferred to the chancery docket. Other allegations of the petition, in the view we take of the case, need not be recited.

It is necessary, in order to present a clear understanding of the case, to set out in full the contract with plaintiffs upon which this suit is brought. It is in the following language:

"This contract, made and entered into this eighth day of July, A. D. 1879, by and between S. L. Wiley & Co., parties of the first part, and Rand & Carson, parties of the second part, witnesseth that, whereas the parties of the second part have a judgment lien against the Ottumwa Water-power Company for the sum of twenty-two hundred and ninety dollars, ($2,290;) and whereas there is a question as to the priority of same; and whereas S. L. Wiley has purchased (in trust) the Ottumwa Water-power Company's property, works and franchises at sheriff's sale, and received a certificate of sale for same; and whereas the Ottumwa Water-power Company assigned to J. E. Langford the capital stock subscriptions that were unpaid, to satisfy his claim against said company; and whereas the said J. E. Langford has entered into a contract with the parties of the first part, a copy of which is hereto attached and made a part of this

contract: therefore the parties of the first part, for the purpose of preventing litigation as to the priority of the second party's lien on the said property of the Ottumwa Waterpower Company, hereby agrees with second party that, in consideration of settlement of claim to priority, and the assignment of the said lien and claim of the second parties to them, they will assign and transfer all their right, title and claim in and to the unpaid subscriptions to the capital stock of the Ottumwa Water-power Company, vested in them under and by virtue of the contract with J. E. Langford aforesaid; and that they will faithfully fulfill the said contract with the said J. E. Langford, and obtain title from him to said subscriptions at the time stipulated in said agreement with said Langford, and assign and convey same to the parties of the second part, upon the organization of a new water-power company; at which time the parties of the second part shall assign and convey to the parties of the first part all their right and title in and to their said claim against the Ottumwa Water-power Company now in judgment; and, after the expiration of said time, this contract shall operate as an assignment and conveyance of the first parties' interest in and to their rights, title, and interest aforesaid, in and to the subscriptions to the capital stock of the said Ottumwa Water-power Company, to the second party, and also the assignment and transfer of second parties' interest in and to their said claim against the Ottumwa Water-power Company; and, in neglect or the refusal to make the evidence of said transfer and assignment by either or both of the parties hereto, then this contract shall be evidence of the same on and after the expiration of the time aforesaid, and shall operate as evidence of the respective transfers of the respective rights and interests of the first and second parties, as above provided and stipulated.

"*Ottumwa, July* 8, 1879.    S. L. WILEY & Co.

"RAND & CARSON.

"By CHAMBERS & McELROY, their attorneys."

Rand & Carson v. Wiley et al.

The contract with Langford, referred to and made a part of the foregoing, is as follows:

" This agreement witnesseth that S. L. Wiley & Co., of the first part, and J. E. Langford, of the second part, have agreed that, in consideration that, said J. E. Langford hereby dismisses his part of the case in the circuit court of Wapello county, Iowa, wherein J. G. Hutchison, trustee, is plaintiff, and Ottumwa Water-power Company is defendant, and has and does hereby relinquish all claim for mechanics' liens, by suit to resist the issuing of execution by said J. G. Hutchison, trustee, to sell the property of said Ottumwa Water-power Company under the decree now in his favor as such trustee, or otherwise, and dismisses absolutely any claim and demand against said Ottumwa Water-power Company, whether by suit or otherwise, against the rights of said J. G. Hutchison, as such trustee, except his (J. E. Langford's) claims and suits to collect the unpaid balance of said subscriptions which were assigned to him by the said Ottumwa Water-power Company; therefore the said S. L. Wiley & Co. agree that after the said J. E. Langford shall have collected all the said subscriptions, and applied the same to the satisfaction of his judgment against the said Ottumwa Water-power Company, which may be available and collectible, the said S. L. Wiley & Co. hereby guaranty to said J. E. Langford that he shall have issued to him stock to the amount of the balance of his judgment which shall remain unsatisfied out of said subscriptions, in a new Ottumwa Water-power Company, which shall be organized after the sale of the property of the present Water-power Company, under the decree in favor of the said Hutchison, trustee, on the Price or Prosser judgment, as soon as the equity of redemption of other lien-holders shall have expired after the said sale; and it is agreed that said S. L. Wiley & Co. will pay to said J. E. Langford what shall be a reasonable attorney's fee for the collection of said subscriptions which were assigned to him, which reasonable attorney's fee shall be determined by

said S. L. Wiley & Co. selecting an attorney, and J. E. Langford selecting an attorney, said attorneys to say what said attorney's fee shall be; and if said attorneys cannot agree on what the fee shall be, then said attorneys shall select a third attorney, and said three attorneys shall determine said attorney's fee; and, when so determined, said attorney's fee shall be paid to said Langford by stock in said new Ottumwa Water-power Company, in the manner in which the said balance of said judgment shall be paid after all said subscriptions shall have been exhausted; and said J. E. Langford, hereby agrees to and does assign to said S. L. Wiley & Co. the balance of his said judgment which shall remain unsatisfied out of collections of said subscriptions, after he (Langford) shall have received his stock in said new water-power company, as herein agreed, for said balance of said judgment; and it is further agreed that said J. E. Langford shall have a right, when said new company is organized, to demand the said stock for said balance of said judgment, but Langford shall in the mean time, use all efforts in his power to collect said subscriptions, and shall then, when he demands said stock, agree with S. L. Wiley & Co. what balance of uncollected subscriptions he will take instead of stock, and what not; and that which shall have been collected by Langford's attorneys, too, shall be considered as credited on the judgment.

"*March* 18, 1879.

[Signed.]                              " S. L. WILEY & Co.
                                       " J. E. LANGFORD."

II. It will be observed that the second instrument is made a part of the first, and that the contract which plaintiffs seek to enforce is to be ascertained by considering together both of the instruments.

The defendants in the first instrument bind themselves "to assign and transfer all their right, title, and claim in and to the unpaid subscriptions to the capital stock of the Ottumwa

Water-power Company, vested in them under and by virtue of the contract of J. E. Landford, and that they will faithfully fulfill the said contract with the said J. E. Langford, and obtain title from him to said subscription at the time stipulated in said agreement with said Langford, and assign and convey the same to [plaintiff] upon the organization of a new water-power company."

We search in vain in the contract between defendants and Langford for any covenant whereby defendants acquire any right or equity in the stock subscriptions. Langford does not agree or undertake to transfer the subscriptions, or any right to them, to defendants. The only purpose and object of that contract seems clearly to have been the securing of Langford for any balance of his judgment remaining after the stock subscription should have been collected and paid thereon, and the payment to him of certain disbursements for attorney's fees. Not one word is found in that contract under which defendants, in any event, could acquire any interest of any character in these subscriptions. The defendants bind themselves to transfer the stock subscriptions they acquire, under their contract with Langford. That contract is made a part of defendants' contract. The two are to be read and construed together. The plaintiffs seek to recover in this action for the failure of defendants to assign the stock subscriptions vested in them under the Langford contract. In the contract between plaintiffs and defendants Wiley & Co., there is no covenant binding defendants to do any other thing. Here arises a difficulty suggested by this inquiry: How can defendants be held liable upon a covenant which is not expressed in the contract with Langford, made a part of the contract sued upon?

III. We think that in this action they may be held liable upon these considerations: (1) Such liability is expressly charged in the petition, and is not directly denied in the answer of defendants Wiley & Co. There is in their answer a general denial of liability, but it is not based upon the

ground that Langford did not enter into a covenent to transfer the stock subscriptions to defendants. On the contrary, it is alleged in their answer that plaintiffs "only acquire the right to an assignment from defendants of whatever right, title or interest should inure to defendants, under the contract with Langford, in stock subscriptions, which would be such and so much of said subscriptions after Langford had collected all that were available and collectible; and upon other conditions alleged. This, to say the least of it, is an admission that defendants are bound by the contract to transfer the subscriptions under certain conditions. (2) One of the defendants in his testimony in the case, while not denying that the contract with plaintiffs bound defendants to transfer the subscriptions upon conditions, inferentially, at least, admits that it does. (3) Defendants show, by their evidence, that they caused what they call a tender of the subscriptions to be made to plaintiffs. While the evidence hardly shows a tender, it certainly shows an offer to transfer the subscriptions. (4) The case was tried all the way through upon the theory that defendants were bound, by their contract with plaintiffs, to transfer to them, upon the happening of certain conditions, stock subscriptions.

We think that these matters require us to regard defendants as bound to transfer the stock subscriptions, under the conditions of the contract, to plaintiffs.

IV. But there has been no transfer by defendants of any stock subscriptions to plaintiffs. We are therefore required to inquire whether, under the terms of the contract, the conditions have occurred which will fix liability upon the defendants, and, if so, what is the extent of such liability. Upon these points of the case there is a large mass of testimony. Much of it on both sides of the case is inapplicable to the issues, or irrelevant. At least, we fail to discover its applicability and relevancy, and we think that much of it is incompetent upon other grounds. We find it wholly unnecessary to discuss the testimony further than to state one fact estab-

lished beyond dispute, which, to our minds, fixes defendants' liability. The fact referred to is the offer, or "tender," as defendants called it, to transfer, under the contract, certain of the stock subscriptions to plaintiffs, who at the time declared that they would receive them, accepting the tender or offer, if the title to the subscriptions should be transferred to them, which defendants declined to do. We think defendants now cannot deny their liability, and must be held, for the value of the subscriptions which they offered to transfer. This offer was not in the way of a compromise or settlement of the disputed claim, but was made for the discharge of defendants' obligation under the contract, and for the payment of the indebtedness arising thereon. It is therefore to be regarded as an admission of defendants' liability, which, of course, is to the extent of the value of the subscriptions.

V. The referee found that the subscriptions were of the value of $668. We think this finding amply supported by the evidence. Indeed, it is possible that they were of greater value; but, as plaintiffs do not appeal, we cannot increase the judgment, and we therefore need go no further than to satisfy ourselves that the value of the subscriptions found by the referee, and approved by the circuit court, is not greater than is established by the evidence. To this sum interest was correctly added from the date of the offer or tender to the day of trial, and judgment was rightly rendered for the aggregate amount.

VI. Whether the decree affects Langford's rights prejudicially we need not inquire, for the reason that he does not appeal, thus showing that he is content with the judgment.

VII. Defendants moved in the court below to retax the costs, and tax a part of them to plaintiffs, for the reason that 2. costs: division of: when not made. plaintiffs and Langford made groundless claims, based upon stock subscriptions which had been paid, or were involved. This objection is renewed in this court. As we understand, counsel's position is based upon

the fact that plaintiffs failed to recover the amount claimed by them.   This does not exempt defendants from liability for any part of the costs, unless there was a tender made and pleaded, or an offer made under the statute to permit judgment to be entered for a sum equal to or greater than the amount of the judgment finally entered.   Nothing of the kind was done in this case.   Defendants are therefore liable for all of the costs.

We are of the opinion that the judgment of the circuit court ought to be

AFFIRMED.